## HUNTINGTON v. CITY OF NEW YORK et al.

(Circuit Court, S. D. New York. August 28, 1902.)

1. **PRELIMINARY INJUNCTION—SUFFICIENCY OF SHOWING—QUESTION OF JURISDICTION.**

    While the question of jurisdiction will not be summarily disposed of by a federal court on a motion for a preliminary injunction, yet the burden rests on complainant on such a motion to satisfy the court that there is at least a reasonable probability of ultimate success on the question of jurisdiction as well as upon the merits.

2. **CONSTITUTIONAL LAW—DUE PROCESS OF LAW—AGENCIES OF STATE.**

    Trespasses on the property rights of an individual, committed by public officers or agents professedly acting under authority of a state law, but which are not only not authorized by such law, but by a fair construction of it are prohibited, cannot be imputed to the state so as to bring them within the constitutional inhibition to deprive persons of property without due process of law, and on that ground to confer jurisdiction on a federal court to grant relief.

3. **SAME—UNAUTHORIZED ACTS OF STATE OR MUNICIPAL OFFICERS.**

    The New York rapid transit act provides that the general plan of railroad lines to be constructed thereunder, which, with a statement of the route or routes, is to be submitted for the approval of the local authorities and of the abutting owners or of the state court, shall show not only the general mode of operation, but also "such details as to the manner of construction as may be necessary to show ·the extent to which any street, avenue, or other public place is to be encroached upon, and the property abutting thereon affected," and that, once approved, no change shall be made in the plans without the further consent and approval of the same authorities. *Held*, that the action of the rapid transit commissioners in locating a tunnel within 7 feet of the building line on one side of an avenue, and entirely outside the limits of the location shown by the general plan which was approved, and the drawings attached, which required the tunnel to be placed under the center of the avenue, and showed its exterior walls 37½ feet distant from the lot line, was without authority of law, and could not be considered an act of the state for the purpose of conferring upon a federal court jurisdiction to grant a preliminary injunction against the construction of such tunnel on the ground that it deprived an abutting property owner, who was a citizen of the state, of property without due process of law.

In Equity. On motion for preliminary injunction.

Arthur H. Masten and Maxwell Evarts, for the motion.
Edward M. Shepard and DeLancey Nicoll, opposed.

LACOMBE, Circuit Judge. This suit is brought to enjoin the defendants from proceeding with the construction of the so-called "Rapid Transit Railroad" in front of complainant's premises on Park avenue, southeast corner of Thirty-Eighth street, "until such time as the city shall have obtained the fee in said avenue"; and, in the event of the city's obtaining such fee, then from constructing such railroad otherwise than in accordance with the route and general plan heretofore approved by the local authorities and by the state court, undertaking under the statute to give consent in lieu of the consent of abutting owners.

The rapid transit act (chapter 4, Laws N. Y. 1891, as amended Laws N. Y. 1895, c. 519) provides that the general plan, which, with a statement of the route or routes, is to be submitted for approval, shall show not only the general mode of operation, but also "such details as to the manner of construction as may be necessary to show the extent to which any street, avenue, or other public place is to be encroached upon, and the property abutting thereon affected." Once approved, no change is to be made in the plans without the further consent and authorization of the local authorities and of the abutting owners, or, in lieu thereof, of the state court.

The complainant's brief thus epitomizes the "route and general plan," which was duly approved, and under which alone, under the statute, the commissioners have authority to construct:

"They provided that the proposed railroad should consist of four parallel tracks, and should run under Park avenue; that, with certain exceptions not now material, the tracks should in all cases be placed in tunnels, and that the said tracks, wherever passing over or under the street, should be placed over or under the central part of the street; that under Park avenue the width of the tunnel should be fifty feet, with a permissible width of sixty-five feet; that the roof of the tunnel should be as near to the surface of the street as street conditions and grades would permit. Certain drawings, known as 'Drawings 1–60,' illustrative of said 'details of construction,' were incorporated into the said general plan as a part thereof. According to the drawings so adopted, it appeared that under Park avenue at the point in question, there was to be a single tunnel containing four tracks, that the center line of the said tunnel was to be under the center line of Park avenue, and that the extreme width of excavation required was to be 65 feet or thereabouts, thus bringing the exterior surface of the easterly wall of such tunnel to about 37 feet 6 inches from the building line of the houses on the east side of Park avenue."

Inspection of the record shows that below the existing tunnel of the existing street railroad there were to be three tunnels, the central one holding two tracks, and the eastern and western tunnels one track each. They were to be located centrally, and within the space of 65 feet, above indicated. The general plan further provided as follows:

"The route should include suitable tracks and connections from the portion of the route near the corner of Park avenue and Forty-Second street to the yard and tracks of the Grand Central Station. All of the tracks and connections last mentioned shall be under Park avenue and Forty-Second street and private property to be acquired. * * * The tracks wherever passing over or under the street shall be placed over or under the central part of the street, except that no tunnel or viaduct, or any wall or part thereof, under or along a street, shall, except at the stations, station approaches, curves, and at places of access to subsurface structures, as hereinafter provided, be within a distance of five feet of the exterior line or side

of the street. * * * Adjacent tracks shall be connected by necessary and suitable switches and connections, and an additional track for siding accommodation may be constructed, not to exceed in length one-quarter of a mile for each mile of roadway; but provided always that the side of the tunnel shall not, by the enlargement of the tunnel for that purpose, be brought within five feet of the exterior line or side of the street."

The work now being prosecuted at the place in question consists of two tunnels beneath the existing street railroad tunnel. The westerly tunnel is substantially in accord with the general plan as to encroachment upon the avenue and effect upon abutting property. Its westerly line is but 5 feet west of the westerly line shown in the drawing. The easterly tunnel is wholly outside of the 65 foot central strip there shown. Its westerly line lies east of the easterly line of the original strip, and its easterly line is about 7 feet from the building line of the houses on the east side of Park avenue. It encroaches on Park avenue to an extent not shown in the "details as to manner of construction," which the statute provided should be shown to local authorities and to property owners, and the court in advance of adoption. That it affects abutting property to an extent greater than was shown is conclusively established by the collapse of the front walls of buildings nearly adjoining complainant's.

All parties are citizens of New York, and the complainant contends that this court has jurisdiction because—

"The board of rapid transit commissioners has been clothed with authority by the rapid transit act to build a subway, and that, acting under such authority and in the course of constructing the tunnel, it is depriving her of property without due process of law, in contravention of the fourteenth amendment, which provides that no state 'shall deprive any person of life, liberty, or property, without due process of law.' "

The illegal acts complained of are stated to be:

"(1) By constructing a railroad under a street, the fee in which is owned by complainant; and (2) * * * by constructing a railroad in accordance with an unauthorized route and general plan of construction, and thus wrongfully depriving the complainant of her easements as an abutting property owner, and usurping her consent to this unauthorized mode of construction."

It is quite correctly contended by complainant that the question of jurisdiction will not be summarily disposed of here. It is properly to be presented by a plea, and thus decided under conditions which will permit of its review on appeal. Nevertheless, upon a motion for preliminary injunction, the burden is upon the complainant to satisfy the court that there is at least a reasonable probability of ultimate success upon the question of jurisdiction as well as upon the merits of the controversy.

As to the ownership of the fee of Park avenue at the place in question, complainant's contention is based upon the proposition that the city never acquired the fee, because a proceeding duly instituted to open the avenue was never completed by entry of final order. The question thus presented need not be discussed, because, upon the papers now before the court, it is not shown that complainant owns the fee, and, that being so, it is immaterial who does own it. Long after the lines of Park avenue were established on the city map, long

after proceedings to open it were instituted and apparently terminated, long after it had been regulated, graded, and paved and used for years as a public thoroughfare, the complainant bought her property at the corner of Thirty-Eighth street. The deed conveyed to her two lots, Nos. 63 and 65 Park avenue, described as bounded upon the west by "the easterly line of Park (or Fourth) avenue," and running 80 feet in depth along Thirty-Eighth street, easterly from said line. Upon her rights as abutting owner only can the complainant rely to press this application.

It is understood that no complaint is made or relief asked for against the centrally located triple tunnel of the general plan as affecting her rights. If it were, the long delay in applying would preclude the granting of preliminary injunctive relief.

The substantial questions here presented are as to the extent of abutting owner's rights or easements, how far they are property within the meaning of the constitution, to what extent they are affected, and, if invaded, what is the appropriate remedy. These points have been exhaustively discussed by both sides, but they are not to be considered unless the court is reasonably satisfied that the alleged interference with complainant's rights is an interference by the state. The inhibition of the fourteenth amendment is against action by a state depriving an individual of his property. The amendment is to be liberally construed. It is not to be confined to a legislative act specifically appropriating the property of A. or B. to some public use. A state acts by agents, and the inhibition runs against all who are in fact such agents, acting within the scope of an authority conferred upon them by the state. In Chicago, B. & Q. R. Co. v. City of Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979, it is said:

"But it must be observed that the prohibitions of the amendment refer to all the instrumentalities of the state, to its legislative, executive, and judicial authorities, and, therefore, whoever, by virtue of public position under a state government, deprives another of any right protected by that amendment against deprivation by the state, 'violates the constitutional inhibition, and as he acts in the name and for the state, and is clothed with the state's power, his act is that of the state.' This must be so, or, as we have often said, the constitutional prohibition has no meaning, and 'the state has clothed one of its agents with power to annul or evade it.'"

A final judgment of a state court construing a state statute so as to make it, although apparently innocuous, actually an interference with property rights, has been held to be the act of a state. So, too, a state law, as it leaves the legislative hands, may not be obnoxious to any challenge, and yet the officers charged with the administration of that valid law may so act under it as to work an illegal trespass upon the rights of individuals. Reagan v. Trust Co., 154 U. S. 390, 14 Sup. Ct. 1047, 38 L. Ed. 1014. But in all such cases—and many have been cited in argument—the officers have acted under authority actually conferred upon them by the statute, there has been some measure of discretion confided to them, and they have abused such discretion.

Now, in the case at bar, the first question to be considered is whether the state, through its legislature, has given or undertaken

to give authority to the rapid transit commissioners to construct this eastern tunnel, which is the thing complained of. If the legislature had merely selected the streets and avenues, and left it to the commissioners to determine whereabouts therein the tunnel should be located, the action of the commissioners would be the action of the state. But it did no such thing. It carefully provided for notice and hearing and consents, for the various steps which make up what is understood to be "due process of law," all to be carried on to a conclusion which should determine upon a route and general plan sufficiently detailed to show the "extent to which any avenue is to be encroached upon and the property abutting thereon affected." Upon such route only, and under such plan only, is any authority to construct conferred by the state on the defendants or any of them. When they depart from such plan, whatever trespass they may commit upon private rights is one which the state has not only not authorized them to commit, but under any fair interpretation of the rapid transit act has forbidden them to commit.

If this court were persuaded to assent to the contention of defendants that this easterly tunnel is within the description in the approved route and general plan, as a mere "connection" or "siding" or what not, then it would take jurisdiction, because the action of commissioners, engineer, and contractors being in conformity to the general plan, which the legislature had provided for and sanctioned, would be action by persons acting under state authority, and thus constituted agents of the state to contravene the provisions of the constitutional amendment. But a different conclusion has been reached. It seems unnecessary to discuss this branch of the case at length, for the reason that the precise point has been considered in a decision handed down this week in a similar cause pending in the state court. This court entirely concurs in the reasoning and in the conclusion most tersely and forcibly expressed in the following excerpt from the opinion in Barney v. Board, 77 N. Y. Supp. 1085:

"These necessary details the 'routes and general plan' undertook to show for the advisement of all persons interested, and in order that intelligent action might be taken by them to conserve their best interests in the subsequent proceedings for the confirmation and approval of the plan. Taking the words used in the 'routes and general plan' with the plans or drawings to which they referred, no person could be expected to apprehend that the fixed position of the tunnel, as under the central portion of the street, was subject to such a change as would bring it for about ten blocks to a point thirty feet nearer the building or house line than was indicated, merely because 'suitable connections' were to be made near Forty-Second street. A civil engineer might have found that something was omitted, or that there was a variance between the plan, which showed the means of making connections, and the specifications, which mentioned the proposed connections; but a layman, for whose advisement the 'routes and general plan' had been prepared under the statute, could properly assume that, in some way best known to engineering science, these 'suitable connections' were to be made from a tunnel under the middle of the street. Certainly he could rely upon the general proposition that the scientific construction of a railway, with the necessary curves for the approach toward a given point, does not depend upon guesswork or chance; and I think, therefore, that no reasonable interpretation of the 'routes and general plan' would afford room for justifying the extraordinary change in the position of the tunnel, as constructed, from the line described in the lawfully approved plan of construction as to

this particular locality. * * * The work of building the tunnel at the point in question is prosecuted without legal authority."

The complainant, therefore, has failed to persuade this court that there is reasonable probability that she will be able upon the trial to show that the state of New York, by any of its instrumentalities or agents, has deprived, or is threatening to deprive, her of her easements as an abutting property owner; and for that reason, without examining into the extent of such easements, her application for preliminary injunction is denied.

The stay in this case is vacated, and the filing of this opinion shall be sufficient evidence of such vacation.